IN THE UNITED STATES DISTRICT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT j.e.patterson1995@gmail.com<br><br>MAINTAINED BY GOOGLE LLC, HEADQUARTERED AT 1600 AMPHITHEATER MOUNTAIN VIEW, CALIFORNIA 94043 | Case No. 21-SW-2160DPR |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Lee Walker, a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I have been employed as a police officer with the City of Springfield, Missouri, since 2004. I am currently a TFO with the FBI, as well as a member of the Southwest Missouri Cyber Crimes Task Force (SMCCTF) in Joplin, Missouri. As a TFO, I have been assigned to investigate computer crimes, including violations against children. I have gained expertise in the conduct of such investigations through training in seminars, classes, and everyday work related to conducting these types of investigations. I have attended training provided the Missouri Internet Crimes Against Children (ICAC) Task Force. I have written, executed, and assisted in over 100 search warrants on the state and federal level. As part of this affiant's duties with FBI, this affiant investigates criminal violations relating to sexual exploitation of children, and the production, receipt, possession, and distribution of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A.

2. I make this affidavit in support of an application for a search warrant for information associated with a certain Google account, which is stored at premises owned, maintained, controlled, or operated by Google LLC (hereinafter "Google"), an electronic communication service and remote computing service provider, headquartered in Mountain View, California, within the Northern District of California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Google to disclose to the Government records and other information in its possession, further described in Attachment B, pertaining to the subscriber or customer associated with the account, further described in Attachment A.

3. The statements in this affidavit are based on my personal observations, my training and experience, my investigation of this matter, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth the facts that I believe necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251, 2252, and 2252A, are currently located within an account maintained by Google.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2251, 2252, and 2252A have been committed by a Google user/account holder registered to email address **j.e.patterson1995@gmail.com**. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## JURISDICTION

5.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND OF INVESTIGATION

6.  In June 2021, Detective Constable Tyler Shipp with the Waterloo, Canada, Regional Police Service (WRPS) arrested a Canadian individual named Daniel Bergsma following the execution of a search warrant at Bergsma's residence. At least two cell phones were seized during the execution of the search warrant. Forensic analysis of Bergsma's cell phones uncovered Snapchat conversations between Bergsma and another individual. During those conversations, this suspect was sharing images of child pornography with Bergsma.

7.  Law enforcement was able to recover these conversations because Bergsma was recording the conversations he was having with the suspect on Snapchat. In total, law enforcement located approximately ten videos that were screen recordings of these Snapchat recordings with the suspect. The Snapchat user's vanity name was "Casting_Cloud95" and his username was "jakerbaker1995."

8.  In reviewing the screen recordings, it appeared that Bergsma had been communicating with Casting_Cloud95 as early as May 9, 2021, through at least May 25, 2021. Detective Shipp provided this affiant with communication logs of these conversations.

9.  During the Snapchat conversations, Casting_Cloud95 sent Bergsma images depicting two female children who were approximately three to five years old (also referred to as Jane Doe One and Jane Doe Two). Casting_Cloud95 claimed that he had access to Jane Doe One

and Jane Doe Two. Casting_Cloud95 sent the following files, purportedly of the two three- to five-year-old female children (Jane Doe One and Jane Doe Two), to Bergsma:

    a.    Six images depicting a child's buttocks / anal region.

    b.    One video of a child's buttocks / anal region.

    c.    Nineteen images of a child's vagina.

    d.    One image of one of the female children between a male's legs with the camera focused on her clothed vaginal area.

    e.    One image of one of the female children between a male's legs with the camera focused on the vaginal area. Her vaginal area is covered but the clothing item covering her vaginal area is loose and skin is visible.

    f.    One image of one of the female children laying across a male's lap with his hand around her vagina and touching her inner thigh. Her skirt is pushed up to the top of her thigh.

10.    Casting_Cloud95 and Bergsma were also exchanging messages in between the exchange of the child pornography images. The messages included the following:

    a.    In response to an image sent by Casting_Cloud95 of a child's nude buttocks and vaginal area, Bergsma wrote, "Nice bum were she from haha :)".

    b.    In response to five images sent by Casting_Cloud95 of a child's vagina, Bergsma wrote, "You need to play with the pussy."

    c.    Bergsma wrote, "I bet it felt great" and "Make a video of it." Casting_Cloud95 then sent a media file depicting a child's exposed vagina.

    d.    Casting_Cloud95 sent multiple images of Jane Doe One and Jane Doe Two. In the images, one of the children was nude from the waist down and was seen squatting

on a laundry machine exposing her bare vagina and bare buttocks. Bergsma wrote, "I thought they were gonna touch each other;)" and Casting_Cloud95 responds, "Loll" and "I just had her pussy un my face." Bergsma wrote, "Does she taste good[?]" Casting_Cloud95 responds, "Daddy just walked in. Lmao. It was only there for a split sec."

11. During the extraction of Bergsma phones, Detective Shipp also located an image of a young female child. The image depicts an adult male pressing his penis against the child's exposed labia. Based on the clothing the child is wearing as well as the metadata, it appeared that the child depicted in this image is one of the two children depicted in the images sent by Casting_Cloud95 of the children playing on the laundry machine.

12. Also located were images of a third child (also referred to as Jane Doe Three), who appeared to be approximately twelve years old. In most of the images, Jane Doe Three is fully clothed. In one of the first images Casting_Cloud95 sent to Bergsma, he sends a Snapchat image of Jane Doe Three sitting on the couch with the caption, "My new step sister."

13. There were videos and images located depicting Jane Doe Three laying on a couch with her pants pulled down slightly exposing her upper buttocks. Casting_Cloud95 sent one image where he is rubbing his erect penis through his pants. In that media, the camera captures both Casting_Cloud95's act of grabbing his genitals and Jane Doe Three as she lays on the couch with her upper buttocks exposed.

14. Detective Shipp learned that the Casting_Cloud95 / jakerbaker1995 account was no longer active on Snapchat. He contacted the National Center for Missing and Exploited Children (NCMEC) to determine if they had any information on the Casting_Cloud95 / jakerbaker1995. Detective Shipp learned that on July 4, 2021, Snapchat had submitted a Cyber Tip (CT) alleging that a user with the username jakerbaker1995 had uploaded a child pornography

file to Snapchat on July 3, 2021. Employees of Snapchat did review the entire contents of the uploaded file before or concurrently with submitting the CT. Snapchat provided the following information about the user that uploaded the file:

    a.    Phone: (417) 631-8231 (unknown if verified during account creation)

    b.    Date of birth: 08-18-1995

    c.    Email: j.e.patterson1995@gmail.com

    d.    Username: jakerbaker1995

    e.    UserID: Casting_Cloud95

    f.    IP Address: 173.16.183.77

    g.    Account created on 01-31-21

15. This affiant reviewed the file uploaded with the CT and found that it depicted a prepubescent child engaged in oral sex with an adult male. This is a commonly traded child pornography video often found in child pornography collected and does not depict Jane Doe One, Jane Doe Two, or Jane Doe Three.

16. Detective Shipp determined that Casting_Cloud95 was likely based out of Missouri, and the investigation regarding Casting_Cloud95 was referred to this affiant for further investigation. This affiant conducted a search of consumer records for the email **j.e.patterson1995@gmail.com** and found the email was associated with Jake Ethan PATTERSON, date of birth August 18, 1995 (matching the self-reported date of birth on the suspect Snapchat account). Consumer records also showed the phone number of (417) 631-8231 was claimed by PATTERSON in 2014.

17. Other consumer records also showed the **j.e.patterson1995@gmail.com** email address was linked to Facebook user account with a username of "jake.patterson.31924." The

public portions of this account include photos of a male who this affiant matched to PATTERSON's Missouri Department of Revenue records. One of the posts on this account included an image of a dog. Another Facebook account with the vanity name of "Shana Miksel" commented on the post of the dog writing, "love you son, rest in peace Shadow". This Facebook account ID for the "Shana Miksel" account was "shana.merriman". The "Shana Miksel" account also contained public images depicting a green couch and wooden coffee table consistent with the background of the images of Jane Doe Three.

18. On October 29, 2021, FBI TFO Charles "Chip" Root, contacted Miksel at her home. Shana was shown sanitized versions of the images of Jane Doe Three. She confirmed the identify of Jane Doe Three and noted that the couch and coffee table were furniture in the living room of her home, located in Jasper County, Western District of Missouri.

19. On November 1, 2021, this affiant contacted PATTERSON at his work at 24 Industry Way, Suite #G, Rogersville, Webster County, in the Western District of Missouri. PATTERSON was interviewed after being read his Miranda rights. The interview was audio recorded. PATTERSON claimed ownership of the Casting_Cloud95 / jakerbaker1995 Snapchat account and **j.e.patterson1995@gmail.com account**.

20. PATTERSON claimed he did not remember communicating with Bergsma, the subject in Canada, but admitted he had encountered child pornography on Snapchat.

21. This affiant showed PATTERSON sanitized versions of the images of Jane Doe Three. PATTERSON identified Jane Doe Three and admitted he produced the images. He confirmed that the video depicted him masturbating while Jane Doe Three was in the background with the top of her buttocks exposed. He said this occurred at Jane Doe Three's home in Jasper County, Western District of Missouri.

22. This affiant also showed PATTERSON sanitized images of the sexually explicit images depicting Jane Doe One and Jane Doe Two. PATTERSON again admitted to producing those images. He identified Jane Doe One and Jane Doe Two. PATTERSON said he recorded and photographed the girls while they played with their exposed vaginas and anuses. He also admitted to creating the image that showed PATTERSON laying his penis on the exposed labia of one of the children, although he could not remember which child was depicted in that image.

23. This affiant seized PATTERSON's phone, a black in color Samsung cellphone, model SM-A505, apparent IMEI 396070103542956. PATTERSON provided the passcode to the phone during his post-Miranda interview. He said there would be additional child pornography on a Mega link stored on his phone.

24. During booking PATTERSON told this affiant that the images of Jane Doe One and Jane Doe Two were taken at their residence, which this affiant determined was located in Jasper County, Western District of Missouri.

25. On November 4, 2021, this affiant submitted a fresh preservation request for Google user account **j.e.patterson1995@gmail.com**.

## BACKGROUND CONCERNING GOOGLE

26. Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service

called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

27. In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

28. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

29. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

30. Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

31. Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through

browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention. Google does not retain Duo voice calls, though it may retain video or voicemail messages.

32. Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them. Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment.

33. Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to

Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

34. Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity.

35. Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

36. When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

37. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

38. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

39. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

40. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored

communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

41. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

42. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

43. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity,

documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

44. Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

45. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. § 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

46. Based on the forgoing, I request that the Court issue the proposed search warrant.

47. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

_____
Lee Walker
Task Force Officer
Federal Bureau of Investigations

Subscribed and sworn to before me via telephone on the ___24th___ day of November 2021.

_____
HONORABLE DAVID P. RUSH
United States Magistrate Judge
Western District of Missouri